**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Robin Gene THOMECZEK, Defendant–Appellant.**

No. 09CA0863.

Colorado Court of Appeals, Div. I.

Aug. 18, 2011.

Rehearing Denied Oct. 13, 2011.

---

John W. Suthers, Attorney General, Alice Q. Hosley, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Samler & Whitson, P.C., Eric A. Samler, Hollis A. Whitson, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TERRY.

Defendant, Robin Gene Thomeczek, appeals the judgment of conviction entered on

jury verdicts finding him guilty of second degree burglary, violation of a protection order, and harassment. He also appeals the sentence imposed for the burglary conviction. We affirm.

## I. Background

Defendant is the ex-husband of the victim, M.N. On January 16, 2008, defendant repeatedly hit M.N. and pulled her hair (January incident). The altercation led to a protection order prohibiting defendant from, among other things, entering M.N.'s residence or contacting her.

Despite the protection order, M.N. occasionally allowed defendant to watch their children and eat family dinners at the residence. However, on the morning of April 26, 2008, defendant went to the residence uninvited (April incident). He entered the residence, criticized the pants M.N. was wearing, and hit her hard on the buttocks. He picked up a telephone and threw it at her, telling her to "call the [expletive] cops." The phone hit M.N.'s head.

M.N. called the police, and defendant fled when an officer arrived. The officer chased defendant for several blocks but was unable to apprehend him. Later that day, officers were called back to the residence and found defendant hiding in the garage.

## II. Res Gestae Evidence

■ Defendant contends the trial court abused its discretion in admitting res gestae evidence of the January incident. We disagree.

■ We review a trial court's rulings on evidentiary matters for an abuse of discretion, and we will not reverse such a ruling unless it is manifestly arbitrary, unreasonable, or unfair. *Kaufman v. People*, 202 P.3d 542, 553 (Colo.2009).

■ ■ "*Res gestae* is a theory of relevance which recognizes that certain evidence is relevant because of its unique relationship to the charged crime." *People v. Greenlee*, 200 P.3d 363, 368 (Colo.2009). It includes incidental matters necessary to explain the charged crime, *People v. Rollins*, 892 P.2d 866, 872–73 (Colo.1995), and "provides the fact-finder with a full and complete understanding of the events surrounding the crime and the context in which the charged crime occurred." *People v. Lucas*, 992 P.2d 619, 624 (Colo.App.1999). Generally, res gestae evidence is linked in time and circumstance to the charged crime. *People v. Quintana*, 882 P.2d 1366, 1373 (Colo.1994).

■ To be admissible, res gestae evidence needs to be relevant, and its relevance must not be outweighed by the danger of unfair prejudice. *People v. Czemerynski*, 786 P.2d 1100, 1109 (Colo.1990). The procedural requirements of CRE 404(b) do not apply to res gestae evidence. *Id.*

Here, defendant asserts that evidence of the January incident was not proper res gestae evidence because it was not "part and parcel" of the April incident and was not necessary for the jury to obtain a complete understanding of the latter incident. He also asserts that evidence of the January incident that led to issuance of the protection order had no bearing on whether he violated the order in the April incident. We disagree with these assertions.

Evidence of the January incident and the parties' conduct thereafter was, indeed, necessary to a full understanding of why the victim and defendant may have behaved as they did in the charged incident, and was probative of defendant's intent with regard to the burglary and harassment charges. This evidence would have helped the factfinder to understand why the victim might have admitted defendant into the residence despite the protection order; what his intent was when he entered the residence; what his intent was when he hit the victim hard on the buttocks; and why he threw a telephone at her and told her to call the police (implying that he knew of the protection order). *See People v. Merklin*, 80 P.3d 921, 925 (Colo.App.2003) (the defendant's history of repeatedly telephoning the victim was admissible as res gestae evidence in trial for violation of restraining order); *People v. Shepherd*, 43 P.3d 693, 697 (Colo.App.2001) (in burglary trial where the victim had restraining order against the defendant, prosecutor's argument regarding the relationship between

the defendant and the victim, and the defendant's prior actions toward the victim, referred to admissible res gestae evidence pertinent to the burglary charge and did not amount to prosecutorial misconduct); *People v. Allen,* 944 P.2d 541, 546 (Colo.App.1996) (evidence of events leading to issuance of restraining order against the defendant was admissible as res gestae evidence in prosecution for the defendant's later entry into the victim's home and threats against the victim). The temporal separation of the two events here does not alter our res gestae analysis. *People v. Gladney,* 250 P.3d 762, 768 (Colo. App.2010) ("[W]e have held that conduct occurring months ... before a charged crime may be admissible as res gestae evidence.").

■ We further conclude that the probative value of this evidence outweighed any potential for unfair prejudice. Any prejudice was mitigated by the trial court's limiting instructions, which admonished the jury not to use the evidence to assess defendant's guilt or innocence.

Accordingly, we conclude the trial court did not abuse its discretion in admitting evidence of the January incident at trial.

### III. Double Jeopardy—Lesser Included Offense

■ We next consider and reject defendant's contention that the crime of harassment, codified in section 18–9–111(1), C.R.S. 2010, is a lesser included offense of violation of a protection order, codified in section 18–6–803.5(1), C.R.S.2010, and that principles of double jeopardy therefore require us to merge his convictions for these two offenses.

■ Because defendant did not raise this argument in the trial court, our review is for plain error. *People v. Tillery,* 231 P.3d 36, 47 (Colo.App.2009) (*cert. granted* May 24, 2010). Generally, "[e]rrors that so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction constitute plain error." *People v. Vigil,* 127 P.3d 916, 929–30 (Colo.2006). However, no definition of plain error will fit every case. *Tillery,* 231 P.3d at 48. "The underlying principle [of plain error, whether there is] 'a reasonable possibili-

ty that the error contributed to [the] conviction,' can be restated as [whether there is] a reasonable possibility that the error contributed to the sentence. In the double jeopardy context, the answer would invariably be 'yes.'" *Id.* (citations omitted).

■ The Double Jeopardy Clauses of the United States and Colorado Constitutions prevent the state from punishing a defendant twice for the same offense. *Patton v. People,* 35 P.3d 124, 128–29 (Colo.2001). This precludes the imposition of multiple punishments for a greater and lesser included offense. *See People v. Leske,* 957 P.2d 1030, 1035 (Colo.1998) (employing test outlined in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)). However, "[t]he Double Jeopardy Clauses do not prevent the legislature from specifying multiple punishments based upon the same criminal conduct." *Patton,* 35 P.3d at 129. These precepts are codified in section 18–1–408, C.R.S.2010.

■ Determining whether double jeopardy prevents the imposition of multiple punishments raises two questions: (1) Did the legislature clearly authorize separate punishments? (2) Absent such express authorization, are the offenses sufficiently distinguishable to permit the imposition of multiple punishments? *Patton,* 35 P.3d at 129.

■ Here, we confine our analysis to the latter question. To discern whether two offenses are sufficiently distinguishable to permit multiple punishments and whether one offense is included in the other, we employ the strict elements test. *Id.* at 130; *Leske,* 957 P.2d at 1036. Under this test, if proof of the elements of the greater offense necessarily establishes all the elements of the lesser offense, the lesser offense is included for purposes of double jeopardy and section 18–1–408. *Leske,* 957 P.2d at 1036. However, if each offense requires proof of an additional fact that the other does not, the test is not met. *Id.*

Here, while defendant contends that proof of harassment of M.N. would necessarily prove violation of the protection order, we are not persuaded that this circumstance would render the crime of harassment a less-

er included offense of the crime of violation of a protection order.

The crimes fail the strict elements test. The People charged defendant with violation of a protection order, a class 1 misdemeanor. The elements of this offense are that the defendant:

1. knowingly,

2. did contact, harass, injure, intimidate, molest, threaten, or touch any protected person, or come within a specified distance of a protected person or premises, and

3. such conduct was prohibited by a protection order, and

4. the defendant had actual knowledge of the contents of such order.

See § 18–6–803.5(1)(a), C.R.S.2010.

Defendant also was charged with harassment, a class 3 misdemeanor. The elements of this offense are that the defendant:

1. with the intent to harass, annoy, or alarm another person,

2. did strike, shove, kick, or touch the person or subject him or her to physical contact.

See § 18–9–111(1)(a), C.R.S.2010.

Each of these offenses requires proof of an element the other does not. Harassment requires a specific intent—an element that need not be proved to establish violation of a protection order, which is a general intent crime. The offense of violation of a protection order requires proof of the existence of a protection order, and proof of the defendant's actual knowledge of that order, which are not elements of harassment. We therefore conclude that the offenses are sufficiently distinguishable to permit the imposition of multiple punishments. See Patton, 35 P.3d at 129.

We note that, in a similar context, a division of this court has held that the crime of harassment by stalking is not a lesser included offense of violation of a protection order. People v. Carey, 198 P.3d 1223, 1227 (Colo. App.2008).

Accordingly, we discern no plain error that could require merger of defendant's convictions for harassment and violation of a protection order.

## IV. Double Jeopardy—Predicate Offense

Defendant next argues that we must reverse the second degree burglary conviction because violation of a protection order cannot serve as its predicate offense. We disagree.

Because defendant did not preserve this argument, we again review for plain error. Tillery, 231 P.3d at 47.

Defendant acknowledges the supreme court's holding in People v. Rhorer, 967 P.2d 147, 150–51 (Colo.1998), that violation of a no-contact order may serve as the predicate offense to second degree burglary. Nevertheless, relying on Woellhaf v. People, 105 P.3d 209 (Colo.2005), he contends that entering the residence in violation of the protection order was the same act constituting unlawful entry for purposes of burglary, and principles of double jeopardy prevent "use of the same act undifferentiated by time, place and volitional departure as both proof of the burglary[ ] and proof of the predicate offense."

This contention, however, fails to acknowledge that defendant could have violated the protection order by means other than entering the residence, and the evidence was such that the jury could have concluded he did so here. The jury could have found that he violated the protection order by harassing M.N., or by contacting, intimidating, touching, or injuring her. Thus, his violation of the protection order in any of these ways could have served as the predicate offense to burglary. See People v. Widhalm, 991 P.2d 291, 294 (Colo.App.1999) ("[T]he evidence suggests that defendant not only violated the restraining order when he entered the 100–yard radius of the victim's apartment, but also violated it by making contact with the victim, and had the intent to do the latter when he entered the apartment.").

We discern no plain error in the use of defendant's violation of the protection order as the predicate offense to second degree burglary.

## V. Burglary Sentence

We also reject defendant's contentions that the burglary sentence is improper and disproportionate.

## A. Propriety

The trial court sentenced defendant to twelve years in the Department of Corrections for the burglary conviction. Defendant asserts this sentence is excessive and the trial court abused its discretion in imposing it. We disagree.

A trial court has extremely broad discretion when imposing a sentence within the presumptive range. *Vensor v. People,* 151 P.3d 1274, 1280 (Colo.2007); *People v. Newman,* 91 P.3d 369, 371–72 (Colo.2004). When making its sentencing determination, the trial court must consider the nature of the offense, the character of the offender, and the public interest. *Newman,* 91 P.3d at 372. It must also state its basic reasons for imposing the sentence. *People v. Fuller,* 791 P.2d 702, 708 (Colo.1990). "If the sentence is within the range required by law, is based on appropriate considerations as reflected in the record, and is factually supported by the circumstances of the case, an appellate court must uphold the sentence." *Id.*

Second degree burglary is a class 3 felony where, as here, the defendant unlawfully enters a dwelling. § 18–4–203(2)(a), C.R.S.2010. The presumptive sentencing range for a class 3 felony is four to twelve years incarceration. § 18–1.3–401(1)(a)(V)(A), C.R.S.2010. The trial court's sentence here fell within the permissible range.

Furthermore, the record reflects that the trial court considered the various purposes of sentencing and noted its duty to be "fair and consistent in treatment of all defendants." The court examined the factual circumstances of the case, finding them to be "quite serious." Addressing defendant, the court stated:

> You struck the victim, you threw something at the victim, and then you challenged the victim to call the police. Upon the police arriving, you [ran] away and escape[d] and you prevent[ed] capture. Then you [came] back and you [were] captured later. You [came] back to the same location again, knowing that restraining order was still in place.

The court also analyzed defendant's extensive criminal history. Though the court noted that he had not been convicted of a felony in more than a decade, it concluded that he had "a history of breaking the law and being violent," and had squandered previous opportunities to change his conduct. The court ultimately determined that defendant could not be rehabilitated.

We are satisfied the trial court gave due consideration to all relevant sentencing factors, and we perceive no abuse of discretion in its sentencing decision.

## B. Proportionality

Defendant also contends that the twelve-year sentence is disproportionate to the offense, constituting a violation of his Eighth Amendment rights. Again, we disagree.

We review the proportionality of a sentence de novo. *People v. Medina,* 926 P.2d 149, 150 (Colo.App.1996).

Only grossly disproportionate sentences are prohibited by the Eighth Amendment, and thus, a reviewing court should initially conduct only an abbreviated proportionality review. *Close v. People,* 48 P.3d 528, 536 (Colo.2002). "If, and only if, that abbreviated proportionality review gives rise to an inference of gross disproportionality does a reviewing court need to engage in an extended proportionality review...." *Id.*

An abbreviated review compares the gravity of the offense with the severity of the punishment. *People v. Deroulet,* 48 P.3d 520, 524 (Colo.2002). In the conduct of this review, "a great deal of deference is due to legislative determinations regarding sentencing." *Id.* at 523.

For proportionality purposes, certain offenses are considered "grave or serious." *Close,* 48 P.3d at 537.

> Because we have determined that certain crimes are grave or serious, it is highly likely that the legislatively mandated sentence for these crimes will be constitutionally proportionate in nearly every instance. Thus, the ability to proceed to the second sub-part of the abbreviated proportionality review, namely the harshness of the penal-

ty, when a grave or serious crime is involved results in near-certain upholding of the sentence. The delineation of certain offenses as grave or serious, then, renders a sentence nearly impervious to attack on proportionality grounds.

*Id.* at 538.

Burglary is a "grave or serious" offense for purposes of a proportionality review. *Id.* As a result, and because the sentence imposed by the trial court here fell within the presumptive range established by the legislature, our abbreviated review leads us to conclude that the sentence is not grossly disproportionate and must be upheld. We therefore need not engage in extended proportionality review.

The judgment of conviction is affirmed, as is the sentence imposed for the burglary conviction.

Judge TAUBMAN and Judge MILLER concur.