19CA0713 Peo v Sanchez 01-27-2022 COLORADO COURT OF APPEALS Court of Appeals No. 19CA0713 El Paso County District Court No. 18CR1885 Honorable Robert L. Lowrey, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Jacob Sanchez, Defendant-Appellant. JUDGMENT AND SENTENCE AFFIRMED Division VI Opinion by JUDGE FREYRE Navarro and Harris, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced January 27, 2022 Philip J. Weiser, Attorney General, Brenna A. Brackett, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Brian Sedaka, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant 
1 ¶ 1 Defendant, Jacob Sanchez, appeals his convictions of intimidating a witness or victim and conspiracy to commit the same. He also appeals his sentence. We affirm. I. Background ¶ 2 The victim and his wife were sleeping in their bedroom when they awoke to find Sanchez standing at the foot of their bed. As his wife left the room, the victim noticed that Sanchez had a knife or boxcutter. He asked if Sanchez was okay, but Sanchez did not respond. Sanchez became more and more agitated as the victim continued to talk to him. The victim’s wife asked Sanchez to leave, but he refused. The victim then told Sanchez that he and his wife needed to leave to pick up his kids and they walked out the front door. Sanchez followed them out of their trailer and, once outside, he threatened to “snitch” on the victim and to kill him. Sanchez spit in the victim’s face and said, “let’s do this.” The victim declined and walked across the street to his father’s trailer, and his father called 911. Police arrested Sanchez and the State charged him with burglary. ¶ 3 Sanchez’s girlfriend, Casey Cooper, visited him several times at the jail. These visitations were audio recorded. During the first 
2 visit, Cooper told Sanchez that she had messaged the victim’s wife and told her not go to court because “Hector said that he saw you and that you told him to go tell them that.” Cooper then offered to go to the victim’s house with her cousin “to tell him what the fuck is up? Like, why are you saying that crazy shit? Stop, you need to fix it or else.” Sanchez responded, “He better fuckin’ fix it man, ‘cause that shit ain’t right.” ¶ 4 A few days later, Cooper told Sanchez that she was going to get the victim’s address and send it to his sister so she could help him out “however she can.” Cooper also said that “someone needs to talk to [the victim] and tell him how it’s going down,” and Sanchez responded, “Exactly.” Sanchez asked Cooper to tell “Oso” that if he wanted to help Sanchez, he should talk to the victim and ask him, “why he fuckin’ lying on me like this.” He further directed Cooper to contact the victim through Facebook and “put him on blast.” ¶ 5 At the next visit, Cooper told Sanchez that she “hit [the victim] up and threatened him” and that she told the victim that she would go over to his house and “start fuckin’ shit up.” She also told Sanchez that his brothers wanted the victim’s address because they 
3 wanted to “handle that” (retrieve Sanchez’s belongings from the victim’s trailer). Sanchez told Cooper that “[the victim] needs to tell the fuckin’ truth and not press charges. Tell [the victim] he better not press charges on me because I didn’t do nothing.” Sanchez continued to direct Cooper to contact the victim and tell him to drop the charges throughout the visit and Cooper responded, “I got you.” ¶ 6 During the final visit, Sanchez told Cooper to tell her sister to “go over there to [the victim’s] and tell [the victim] to drop the charges today, I’ll get out today.” Cooper responded that the victim had blocked her on social media and that they had to go over to the victim’s house to contact him. Again, Sanchez told Cooper to tell the victim, “I didn’t do nothing. Right now as we speak, I have no hard feelings, right? And if you drop the charges today, I’ll get out today with no hard feelings.” ¶ 7 In addition to visiting Sanchez at the jail, Cooper contacted the victim on Facebook and “explain[ed] why [he] should have never called the cops.” She also sent him threatening messages. ¶ 8 Additionally, the victim received daily threats at his home. People drove or walked by his trailer, yelled at him, and said the threats were for Sanchez. The victim recognized some of these 
4 people as Sanchez’s fellow gang members. More than once, unknown people fired guns at the victim’s trailer, and bullets passed through the doors and windows. One night, the victim heard banging on the side of his trailer and discovered a knife lodged in the side of the trailer. On another occasion, the victim came home to find three people breaking into his trailer and taking his property on behalf of Sanchez. ¶ 9 The victim reported these incidents to law enforcement and Cooper was arrested and charged with witness intimidation. The threats and harassment ceased after Cooper and Sanchez were both in custody. II. Sufficiency ¶ 10 Sanchez first contends that there was insufficient evidence to support his intimidation of a witness or victim charge because he did not issue any threats or commit any prohibited acts, due to his incarceration. He also asserts that insufficient evidence showed that he intended or agreed to commit witness intimidation to support his conspiracy conviction. We disagree. 
5 A. Standard of Review and Applicable Law ¶ 11 We review sufficiency of the evidence de novo. McCoy v. People, 2019 CO 44, ¶ 27. In assessing the sufficiency of the evidence to support a conviction, we employ the substantial evidence test to determine whether the evidence, viewed as a whole, and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt. Clark v. People, 232 P.3d 1287, 1291 (Colo. 2010). We must give the prosecution the benefit of every reasonable inference that may be fairly drawn from the evidence. People v. Duran, 272 P.3d 1084, 1090 (Colo. App. 2011). ¶ 12 “The pertinent question is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Clark, 232 P.3d at 1291. The jurors are entrusted with resolving the weight and credibility of the evidence. People v. McGlotten, 166 P.3d 182, 188 (Colo. App. 2007). And we do not sit as the thirteenth juror to reassess credibility or to reweigh the evidence presented to the jury. Clark, 232 P.3d at 1293. 
6 ¶ 13 As relevant here, a person commits the crime of intimidating a witness or victim if, by use of a threat, act of harassment as defined in section 18-9-111, [C.R.S. 2021,] or act of harm or injury to any person or property directed to or committed upon a witness in any criminal or civil proceeding; a victim of any crime . . . he or she intentionally attempts to or does: (a) Influence the witness or victim to testify falsely or unlawfully withhold any testimony; or (b) Induce the witness or victim to avoid legal process summoning him to testify; or (c) Induce the witness or victim to absent himself or herself from an official proceeding; or (d) Inflict such harm or injury prior to such testimony or expected testimony. § 18-8-704(1), C.R.S. 2021. As relevant here, a person commits harassment if, with the intent to harass, annoy, or alarm another person, he or she: (e) [d]irectly or indirectly initiates communication with a person or directs language toward another person, anonymously or otherwise, by telephone, telephone network, data network, text message, instant message, computer, computer network, computer system, or other interactive electronic medium 
7 in a manner intended to harass or threaten bodily injury or property damage . . .; or . . . (g) [m]akes repeated communications at inconvenient hours that invade the privacy of another and interfere in the use and enjoyment of another’s home or private residence or other private property . . . . § 18-9-111(1). ¶ 14 A person commits conspiracy to commit a crime if, with the intent to promote or facilitate its commission, he agrees with another person or persons that they, or one or more of them, will engage in conduct which constitutes a crime or an attempt to commit a crime, or he agrees to aid the other person or persons in the planning or commission of a crime or of an attempt to commit such crime. § 18-2-201(1), C.R.S. 2021. B. Analysis ¶ 15 Sanchez concedes that a defendant may be convicted of intimidating a witness or victim where the defendant directs another person to issue a threat to a witness or victim. See People v. Rester, 36 P.3d 98, 99 (Colo. App. 2001) (affirming the intimidation of a victim convictions “related to an incident in which [the defendant] called his wife’s daughter and indicated that he 
8 would take it as a ‘personal threat’ if his wife were to return from California to testify against him”). He argues, however, that there was no evidence that he committed a prohibited act or that he directed Cooper or any other person to threaten and harass the victim or to damage the victim’s property. ¶ 16 Contrary to his contention, we conclude that the prosecution presented sufficient evidence that Sanchez indirectly harassed the victim and that he directed Cooper to threaten and harass the victim on his behalf, based on the following evidence:  Sanchez repeatedly told Cooper to tell the victim to tell the truth or to drop the charges. And he told Cooper to tell other people to do the same.  When Cooper told Sanchez “someone needs to talk to [the victim] and tell him how it’s going down,” Sanchez responded, “Exactly.”  Sanchez told Cooper to contact the victim on Facebook and put him “on blast.” Cooper then sent the victim threatening messages on Facebook and the victim eventually blocked her. 
9  Cooper told Sanchez that his siblings wanted the victim’s address to “help” Sanchez get his things. The victim then found three people breaking into his trailer and taking his property on Sanchez’s behalf.  After Cooper told Sanchez that the victim had blocked her, Sanchez instructed Cooper to go the victim’s trailer with her sister that day and tell the victim to “drop the charges today, I’ll get out today with no hard feelings.”  The harassment and threats stopped when both Sanchez and Cooper were incarcerated. See id. ¶ 17 We similarly conclude that sufficient evidence supports Sanchez’s conspiracy conviction. Indeed, the record reveals that Sanchez did more than simply listen to Cooper’s descriptions of threatening the victim. He told Cooper to use Facebook to contact the victim, he told her what to say, he told her to go to the victim’s trailer, and he told her to tell other people to contact the victim. ¶ 18 Viewing this evidence in the light most favorable to the prosecution, we conclude that the jury could reasonably determine beyond a reasonable doubt that Sanchez intimidated the victim by 
10 the use of threats and acts of harassment, and that he conspired to commit intimidation of a witness or victim. III. Evidence of Underlying Burglary Case ¶ 19 Sanchez next contends that the trial court erred by admitting testimony about the underlying burglary case involving the victim. Specifically, he argues that the facts of the underlying burglary case were irrelevant and unfairly prejudicial under CRE 403. He does not otherwise challenge admissibility under the remaining factors set forth in Spoto v. People, 795 P.2d 1314 (Colo. 1990). We perceive no error. A. Additional Facts ¶ 20 The prosecution filed a pretrial notice of its intent to introduce evidence of two underlying burglary cases — 18CR963 (involving the named victim here) and 18CR973 (involving a different victim).1 The prosecutor argued that the evidence was relevant to Sanchez’s motive to intimidate the victim, his state of mind, and his intent; and that the evidence was admissible as res gestae. Defense counsel objected and argued that the evidence was inadmissible 1 Sanchez does not challenge the admissibility of the evidence in 18CR973 so we do not address it. 
11 character evidence and that the danger of unfair prejudice outweighed its probative value. ¶ 21 The trial court ruled that it would allow “evidence of the [18CR]963 and [18CR]973 cases to the extent that they [were] necessary to prove a basis for [Sanchez’s] actions in the newly charged case.” It reasoned that the information from the [18CR]963 and [18CR]973 are necessarily presented in some fashion to provide a basis for even charging the [present] case. It shows a motive, it shows an intent, a state of mind, it shows the absence of any simpl[e] accident or mistake. So, for all those reasons it’s certainly relevant information. They’re relevant to a material fact; that is, his state of mind, reason for doing what he is alleged to have done. It’s completely independent of any inference that he’s simply acting under bad character. I cannot find that the probative value is outweighed by the danger of unfair prejudice because it’s essentially the essential bits of information must be provided to even prove the [present] case. . . . It would also come in under res gestae because, again, these elements would have to be proven to provide a basis for the underlying current charge in the [present] case. Otherwise, that would make no sense to the 
12 jury. So to the extent it would provide benefit to the jury by way of information, that the charge would make no sense without this added information, the Court finds that it is logically related and should be presented. ¶ 22 Before trial, the court ruled that Sanchez’s convictions in the burglary cases were inadmissible. But it reiterated that there needed to be “some mention of the prior bad acts . . . because otherwise there’s no predicate for the intimidation charge.” ¶ 23 During the victim’s direct examination, the prosecution elicited the facts described above that resulted in Sanchez’s burglary charge. The victim did not testify about the burglary trial or Sanchez’s burglary conviction. ¶ 24 At the close of evidence, the trial court instructed the jury: “You have heard testimony that the defendant was charged with two prior burglaries. You can consider that evidence only as it relates to absence of mistake, modus operandi, motive[,] and intent. You must not consider it for any other purpose.” B. Standard of Review and Applicable Law ¶ 25 We review the trial court’s evidentiary rulings for an abuse of discretion. People v. Miranda, 2014 COA 102, ¶ 46. The trial court abuses its discretion when its evidentiary ruling is manifestly 
13 arbitrary, unreasonable, or unfair, or based on a misunderstanding or misapplication of the law. Id. In assessing the admissibility of relevant evidence, the evidence should be given its maximum probative value and minimum prejudicial effect. People v. Quintana, 882 P.2d 1366, 1375 (Colo. 1994). ¶ 26 Although the parties agree this issue was unpreserved, we nevertheless conclude that defense counsel preserved this issue by objecting to the prosecution’s pretrial notice and by arguing against the admission of the evidence at the hearing. See People v. Zubiate, 2013 COA 69, ¶ 22 (“We are not bound by the parties’ concessions and may rely on our own legal interpretations . . . .”). Thus, we review this issue for harmless error. People v. Yachik, 2020 COA 100, ¶ 38. An error is harmless when it does not affect the substantial rights of the parties. Id. ¶ 27 Only relevant evidence is admissible. CRE 402. Relevant evidence means evidence that tends “to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” CRE 401. “Other act” evidence is relevant when it is admitted for the purpose of proving “motive, opportunity, intent, preparation, 
14 plan, knowledge, identity, absence of mistake, or lack of accident.” CRE 404(b)(2); see People v. Rath, 44 P.3d 1033, 1038 (Colo. 2002). ¶ 28 Even if relevant, evidence may be inadmissible “if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.” CRE 403. “Evidence is unfairly prejudicial where it introduces into the trial considerations extraneous to the merits, such as bias, sympathy, anger, or shock.” People v. Greenlee, 200 P.3d 363,367 (Colo. 2009). C. Analysis ¶ 29 Sanchez concedes that some evidence of the burglary charge was relevant to whether the victim was a witness or victim within the meaning of the intimidation statute, including (1) the date of the alleged burglary; (2) the charges against Sanchez; and (3) the victim’s role as an anticipated witness and named victim in the case. See § 18-8-704(1). He contends, however, that the facts of the burglary charge were irrelevant and unfairly prejudicial. We disagree and conclude, consistent with the trial court, that the facts of the underlying burglary charge are relevant to the elements of the crime and to Sanchez’s intent, motive, and state of mind. 
15 ¶ 30 The victim’s description of the burglary demonstrated the gravity of the underlying offense and provided a motive for Sanchez’s desire to persuade the victim not to cooperate in its prosecution. It also showed Sanchez’s knowledge of the victim’s involvement in the criminal proceedings and in particular, the importance of the victim’s testimony in identifying him as the perpetrator. Finally, it informed the jury of Sanchez’s state of mind when discussing the burglary case with Cooper. Accordingly, the evidence was relevant to prove Sanchez’s state of mind, his motive to commit witness intimidation, and his motive to direct Cooper to threaten and harass the victim. See People v. Cousins, 181 P.3d 365, 372 (Colo. App. 2007) (finding that evidence of the defendant’s prior actions established the “defendant’s animus toward women as a motive for his attack on the victim”). ¶ 31 As well, the facts of the burglary case were relevant to prove that Sanchez attempted to influence the victim to testify falsely. See § 18-8-704(1)(a); see also People v. Thomeczek, 284 P.3d 110, 114 (Colo. App. 2011) (finding that evidence of a prior incident and the parties’ actions thereafter was probative of the defendant’s intent). At trial, Sanchez challenged the credibility of the victim’s 
16 account of the burglary, arguing that he only wanted the victim to tell the truth. Evidence about the underlying burglary case rebutted this defense theory by showing that Sanchez intended to influence the victim’s testimony. ¶ 32 Furthermore, we agree with the trial court that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. See CRE 403. In any event, the potential for unfair prejudice was diminished by the limiting instruction which precluded the jury’s use of the burglary facts for any purpose other than absence of mistake, modus operandi, motive, and intent. And we presume the jury understood and followed this limiting instruction. See People v. Garcia, 2012 COA 79, ¶ 20. ¶ 33 Accordingly, the trial court did not abuse its discretion by admitting testimony about the facts of the underlying burglary case. IV. Prosecutorial Misconduct ¶ 34 Sanchez next contends the prosecutor engaged in four instances of misconduct: (1) misstating the law in rebuttal closing argument by arguing that Sanchez was guilty because he directed Cooper to commit a crime and by suggesting he should have told 
17 Cooper not to commit a crime; (2) telling the jury he was convicted of the underlying burglary in rebuttal closing argument; (3) appealing to the jury’s sympathy; and (4) arguing the irrelevant facts of the underlying burglary case. He further contends that the misconduct requires reversal independently and cumulatively. We disagree. A. Standard of Review and Applicable Law ¶ 35 We review claims of prosecutorial misconduct using a two-step analysis. Wend v. People, 235 P.3d1089, 1096 (Colo. 2010). First, we determine whether the prosecutor’s conduct was improper based on the totality of the circumstances. Id. If so, we determine whether such conduct warrants reversal under the proper standard of review. Id. ¶ 36 We evaluate claims of improper argument in the context of the argument as a whole and in light of the evidence before the jury. People v. Samson, 2012 COA 167, ¶ 30. “In doing so, we recognize that prosecutors have wide latitude in the language and style they choose to employ, as well as in replying to an argument by opposing counsel.” Id. 
18 ¶ 37 Where a defendant does not object to the prosecutor’s statements, we review only for plain error. Hagos v. People, 2012 CO 63, ¶ 14. Prosecutorial misconduct constitutes plain error only when it was obvious and “seriously affected the fairness or integrity of the trial.” Domingo-Gomez v. People, 125 P.3d 1043, 1053 (Colo. 2005). “Only prosecutorial misconduct which is ‘flagrantly, glaringly, or tremendously improper’ warrants reversal.’” Id. (citation omitted). ¶ 38 Because the right to a fair trial includes the right to an impartial jury, prosecutorial misconduct that misleads a jury may warrant reversal. Harris v. People, 888 P.2d 259, 264 (Colo. 1995). But a prosecutor’s use of rhetorical devices to argue record evidence or to respond to the defense’s arguments is not misconduct. Samson, ¶ 31 (prosecutors may “employ rhetorical devices and engage in oratorical embellishment”). And prosecutorial misconduct in closing argument rarely constitutes plain error. People v. Weinreich, 98 P.3d 920, 924 (Colo. App. 2004), aff’d, 119 P.3d 1073 (Colo. 2005). 
19 B. Misstatement of the Law ¶ 39 Sanchez first contends that the prosecutor misstated the law when he told the jury it could find him guilty for directing Cooper to commit a crime. ¶ 40 During closing argument, defense counsel argued that the prosecution did not meet its burden of proving the element “by use of a threat, an act of harassment, or by committing an act of harm or injury upon any person or property.” She asserted that Sanchez did not “direct anyone to harass, didn’t direct anyone to do any of these things to [the victim], to [the victim’s] home.” Sanchez only wanted the victim to tell the truth and Cooper went “rogue.” ¶ 41 In rebuttal, the prosecutor argued, Defense counsel says I can’t prove this charge. Intimidating a witness or a victim, look at [instruction number four]. Directed to or committed upon a witness. There’s only one of those ors. Mr. Sanchez directed this to happen. He thinks because he’s in jail and we know where he was that he has the perfect alibi, hands are clean. He knows he’s got Cooper in his pocket. We all know she would do anything for him because she says that to him, no matter what it is . . . . He knows that. He’s a smart guy. He has the control. He directed her to do this. 
20 ¶ 42 For the reasons set forth in Part II, we conclude that the prosecutor did not misstate the law when he argued that Sanchez could be guilty of committing intimidation of a witness or victim by directing Cooper to threaten and harass the victim. In addition, the prosecutor’s comments were a fair response to defense counsel’s argument that Sanchez did not direct Cooper or anyone else to threaten or harass the victim or cause damage to the victim’s property. See People v. Vialpando, 804 P.2d 219, 225 (Colo. App. 1990) (“A prosecutor is afforded considerable latitude in the right to reply to an argument by opposing counsel.”). ¶ 43 Sanchez also contends that the prosecutor misstated the law when he suggested that Sanchez was guilty because he failed to tell Cooper not to hurt the victim. ¶ 44 In rebuttal, the prosecutor argued, Tell [the victim] to drop the charges. Defense counsel hit the nail right on the head . . . . Let’s talk about what the defendant doesn’t say in those video visitations. Cooper says I don’t know what else to do beside hurt these people. Nothing. No, no, stop, don’t, I don’t want any part of this. Casey, you’re crazy. None of that. ¶ 45 We acknowledge that Sanchez did not have a duty to dissuade Cooper from committing witness intimidation. See § 18-1-501(7), 
21 C.R.S. 2021 (defining “omission” as “a failure to perform an act as to which a duty of performance is imposed by law”); see also People v. Madison, 176 P.3d 793, 802 (Colo. App. 2007) (assuming that the prosecution must prove the existence of a duty imposed by law that a defendant breached in order to prove criminal liability for an omission). But we must evaluate the prosecutor’s remarks in the context of the entire argument and the evidence presented. Doing so, we conclude that the prosecutor legitimately commented on the recorded conversations between Sanchez and Cooper and made reasonable inferences about Sanchez’s intent by not dissuading Cooper from hurting the victim. See Domingo-Gomez, 125 P.3d at 1048 (final arguments may properly refer to the facts in evidence and any reasonable inferences drawn therefrom). C. Facts Not in Evidence ¶ 46 Sanchez also contends the prosecutor violated the trial court’s order when she informed the jury that he was convicted in the underlying burglary case, contrary to the court’s order. See People v. Denhartog, 2019 COA 23, ¶ 58 (“[A] prosecutor may not refer to facts not in evidence, which, we assume, would include facts 
22 excluded from evidence.”) (citation omitted). We discern no violation. ¶ 47 In rebuttal, the prosecutor argued, The defendant thinks because he was in jail he cannot be held responsible for this, but he made a mistake because of motive. You want to know why we talked about those other burglaries? Because Mr. Sanchez has the motive to keep [the victim] from testifying. He has all the motive in the world. There were no other criminal actions where [the victim] was the victim in that you heard. Just this one. And it stopped at least for the time when both the defendant and co-conspirator were in jail. That’s not a coincidence. There’s only one person on this planet with that type of motive, and that is Mr. Sanchez. Look at [the victim’s] motive. Maybe it’s revenge. Did that look like somebody that was after revenge? That was a broken man. He’s here because the most sacred place to him had been violated time and time again, and he wanted it to stop. That’s why he’s here, not because he’s out to get Mr. Sanchez. He got that on the burglary case. What would be the point? [The victim] admitted to you that he was in fear of his life. Think about how hard that would be to admit in front of the person who is intending to inflict that fear upon you. Think how hard it would be to tell that person face to face you won, you intimidated me, I was afraid for my life. Was he scared up here? Absolutely. That’s human. That’s real. That’s how you know whether or not he’s telling the truth. 
23 (Emphasis added.) ¶ 48 We do not view the italicized language above as telling the jury that Sanchez was convicted in the burglary case. Instead, we conclude that the prosecutor properly argued that the burglary facts established Sanchez’s motive to intimidate the victim. Id. at ¶ 59 (finding that the prosecutor’s comment argued that the facts in evidence established the defendant’s intent). The prosecutor did not tell the jury that Sanchez was convicted in the underlying burglary case, nor did she imply that he was convicted. Instead, the prosecutor contrasted Sanchez’s motive to intimidate the victim with the victim’s motive, arguing that the victim did not have an ulterior motive in testifying about the intimidation because any motive for revenge was “got . . . on the burglary case.” And the jury heard testimony about the underlying burglary case. Thus, we discern no misconduct. D. Sympathy ¶ 49 Sanchez next contends the prosecutor improperly appealed to the jury’s sympathies by describing the victim as a broken man and by explaining why the victim had difficulty testifying. We disagree and conclude the prosecutor’s comment was a reasonable inference 
24 from the evidence of the victim’s credibility. See People v. Wilson, 2014 COA 114, ¶ 52 (“A prosecutor may, however, draw reasonable inferences from the evidence as to the credibility of witnesses.”). ¶ 50 During his testimony, the victim had a hard time keeping track of timelines and could not recall the dates of specific events. He testified that “he was going through a lot” when he was being threatened and harassed, and that he had been “under a lot of stress.” The prosecutor drew reasonable inferences from this testimony by arguing that the victim was afraid during the intimidation and during his testimony and to rebut the defense argument that the victim was not credible. Thus, we discern no error. E. Underlying Burglary Case ¶ 51 Sanchez last contends that the prosecutor improperly argued the facts of the underlying burglary case in violation of the trial court’s pretrial ruling. However, the court only excluded evidence of Sanchez’s conviction, not the facts of the underlying burglary case. For the reasons stated in Part III, we conclude the prosecutor properly argued admissible evidence. 
25 F. Cumulative Error ¶ 52 Because we have concluded that no prosecutorial misconduct occurred, we necessarily reject Sanchez’s contention that cumulative prosecutorial misconduct requires reversal. Howard-
Walker v. People, 2019 CO 69, ¶ 24. V. Trial Court’s Illustration of Reasonable Doubt ¶ 53 Sanchez next contends that the trial court’s illustration of reasonable doubt during voir dire impermissibly lowered the prosecutor’s burden of proof and requires reversal. While we do not condone such illustrations, we conclude that the illustration here was so unclear that reversal is not required. A. Additional Facts ¶ 54 Before voir dire, the trial court instructed the jury that the prosecution had to prove each element of the crimes charged beyond a reasonable doubt. The court then instructed the jury on the meaning of reasonable doubt by reading the model jury instruction. ¶ 55 The court then described the prosecution’s burden with an illustration: 
26 THE COURT: It will be up to you as a juror to determine what that is to you based upon that definition. One thing reasonable doubt is not, though, is beyond all doubt. It is not beyond a shadow of a doubt or any doubt. Because almost nothing can be proven to that level. But it does need to be beyond a reasonable doubt. Let me give a simple example that I occasionally use. How many people in this room think that I’m a district judge? Anyone? We have a couple. Everyone pretty much thinks I’m a district judge. Why do you think that? PROSPECTIVE JUROR: It says so right there. THE COURT: My name is on the front of this. That’s sort of a giveaway, isn’t it? I’m wearing this nice attire that the State has given me to wear. Not everybody wears a robe like this. That’s another hint. I have thinning white hair. That’s also probably another clue that I’ve been around for a while. So everybody thinks that I’m a district judge. Do you think that beyond a reasonable doubt? Do you have any doubt? You might have some doubt. How many of you have heard on television stories over the years on Dateline and things like that about people impersonating people in other vocations or professions. Some of them do it for almost a lifetime. They hold themselves out as doctors or medical professionals or insurance agents or attorneys or judges or whatever, and they pull it off for years and years and years and nothing ever questions it. That could be me. You probably think that’s not true. You probably think I really am a 
27 judge, at least the State of Colorado thinks that. But is that proof beyond all doubt? There’s always that lingering doubt. Maybe this guy is one of those imposters that’s pulled it off for [twenty] or [thirty] years. So that’s what I mean. You can’t prove anything just sitting here beyond all doubt, but it must be beyond a reasonable doubt. Not a vague, speculative, or imaginary doubt, but such a doubt as would cause reasonable people to hesitate to act in matters of importance to themselves. That’s what the trial is all about. We’ll have [thirteen] of you sit and listen to this evidence, and [twelve] of you will then go back and determine whether or not the People have met that particular burden. B. Standard of Review and Applicable Law ¶ 56 We review de novo whether jury instructions as a whole accurately informed the jury of the law. Johnson v. People, 2019 CO 17, ¶ 8. A court’s decision to provide a particular instruction is reviewed for an abuse of discretion. People v. Sandoval, 2018 COA 156, ¶ 11. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, unfair, or contrary to law. Id. at ¶ 26. ¶ 57 The prosecution bears the burden to prove every element of the crime charged beyond a reasonable doubt. Johnson, ¶ 10. Any 
28 instruction or illustration on reasonable doubt that lowers this burden of proof violates a defendant’s constitutional right to due process. People v. Garcia, 113 P.3d 775, 784 (Colo. 2005). And, “[a]n instruction that lowers the prosecution’s burden of proof below reasonable doubt constitutes structural error and requires automatic reversal.” Johnson, ¶ 8. ¶ 58 To determine whether a trial court’s illustration of beyond a reasonable doubt lowered the prosecution’s burden of proof, we apply a functional test. Tibbels v. People, 2022 CO 1, ¶ 2. We “must ask whether there is a reasonable likelihood that the jury understood the court’s statements, in the context of the instructions as a whole and the trial record, to allow a conviction based on a standard lower than beyond a reasonable doubt.” Id. “In this way, even statements made to the venire during voir dire can, in context, have the effect of instructing the jury on the law to be applied, and the reviewing court must determine whether such statements operated to reduce the prosecution’s burden of proof.” Pettigrew v. People, 2022 CO 2, ¶ 36. 
29 C. Analysis ¶ 59 The United States Supreme Court and our supreme court have both cautioned trial courts and attorneys against further defining the standard for reasonable doubt. See, e.g., Holland v. United States, 348 U.S 121, 139-40 (1954); Tibbels, ¶ 25; Johnson, ¶ 13. While we also discourage the use of illustrations to further explain the reasonable doubt standard, we discern no reversible error here for two reasons. ¶ 60 First, in the context of the instructions as a whole, the trial court properly instructed the jury on reasonable doubt in accordance with the model jury instructions before providing the illustration. And unlike the court in Tibbels, the court here never criticized or undermined the model instruction. See Tibbels, ¶ 50 (finding the court’s crack-in-the-foundation example significant because the court gave the example immediately after undermining the model instruction on reasonable doubt). As well, the court repeated the model “hesitate to act” language immediately following the illustration. See Pettigrew, ¶ 42; Johnson, ¶ 16; see also COLJI-
Crim. E:03 (2020). The court then repeated the model reasonable doubt instructions at the close of evidence. See Pettigrew, ¶ 42. 
30 Because the jury never indicated confusion about the reasonable doubt instruction, we presume that the jury understood and followed the court’s instructions. Leonardo v. People, 728 P.2d 1252, 1255 (Colo. 1986). ¶ 61 Second, like the court’s “hesitate to act” instruction in Johnson, ¶ 15, the trial court’s illustration here was “too nonsensical” for the jury to understand. The judge rhetorically asked the jury whether it thought he was a district court judge beyond a reasonable doubt without providing concrete examples or answers. Did they have “any doubt” based on the surrounding circumstances (i.e., the judge’s name plate, his black robe, and his “thinning white hair”) that he was a district court judge? In an attempt to explain the difference between beyond a reasonable doubt and beyond all doubt, he then told the jury that it may have some doubt that he is a judge because there had been stories on Dateline and other media sources of people impersonating professionals for years. And even if the jury probably thought he was a district court judge, it may have a “lingering doubt” that he was an imposter. In our view, the court’s series of rhetorical questions and references to imposters in other professions left the 
31 jury with no concrete example that it might have used in assessing the prosecution’s burden of proof. Compare Tibbels, ¶ 55 (“[T]he [court’s] crack-in-the-foundation example was a clear, real-world scenario that we believe the jurors would readily have understood and relied on . . . .”), with Pettigrew, ¶¶ 42, 45 (the trial court’s confusing birth certificate example, read in context, did not warrant reversal). ¶ 62 Accordingly, we conclude that the court’s confusing illustration did not impermissibly lower the prosecution’s burden of proof, did not prejudice Sanchez, and thus, does not require reversal. Pettigrew, ¶ 46. But again, we discourage the use of examples and illustrations to define “reasonable doubt” because “[t]hese efforts, at best, provide no additional clarity and, at worst, create needless litigation that jeopardizes otherwise valid convictions.” Id. at ¶ 47. VI. Jury Nullification ¶ 63 Sanchez next contends the trial court denied his right to a jury trial by instructing the jury that it must follow the law as the court instructed. We disagree and discern no error in the court’s instruction. 
32 A. Additional Facts ¶ 64 Before voir dire, the trial court instructed the jury on its duty to follow the law provided by the court: You must follow the instructions of law if you are on this jury. You don’t get to decide what the law might be, what you wish it could be, but you must follow the law as I instruct it to you. Does anybody have any trouble with that basic concept in our law? Let me give you a simple example I use from time to time. Suppose you’re up the street on Bijou or Kiowa where the municipal court sits up there. Let’s suppose you were on a small jury and you were tasked with deciding whether someone was speeding on I-25 or not. Let us suppose the evidence in that case showed that someone was doing 100 miles per hour on I-25 through Colorado Springs. Let us suppose the judge told you that if you find they were doing more than [sixty-five] miles per hour you would find them guilty of that charge. If you didn’t find that proof, you would find them not guilty. But let us suppose the evidence showed they were, in fact, doing 100 miles per hour. Let us also suppose you drive a Porsche or Corvette and you think it’s just fine to drive 100 miles per hour on I-25 through Colorado Springs. It’s easy for you, it’s easy for your car, it handles well, so you think that’s just fine. But do you understand you cannot substitute your judgment for what would be the appropriate law? You can’t make it up and say because I can do that, I think it’s okay, so I’m not going to find the person guilty in that case for doing 100 miles per hour. 
33 Does everyone understand that simple example? You don’t get to substitute your judgment for the law that you will be instructed by the Court. Does anyone have a problem with that concept? B. Standard of Review ¶ 65 The parties agree that this alleged error was not preserved, but they dispute the proper standard of reversal if we find an error occurred. Sanchez contends that the court’s instruction denied him his right to a jury trial and constitutes structural error. See Sullivan v. Louisiana, 508 U.S. 275, 281 (1993). Specifically, he argues that the trial court’s instruction infringed on the jury’s power to acquit and that it abolished the jury’s nullification power. The People argue that plain error applies. We need not resolve this dispute, however, because we discern no error. ¶ 66 Whether a trial court’s instruction accurately states the law is a legal question we review de novo. Johnson, ¶ 8. C. Analysis ¶ 67 Jury nullification is a juror’s “knowing and deliberate rejection of the evidence or refusal to apply the law because the result dictated by law is contrary to [each] juror’s sense of justice, morality, or fairness.” People v. Waller, 2016 COA 115, ¶ 57 
34 (quoting State v. Nicholas, 341 P.3d 1013, 1015 (Wash. Ct. App. 2014)). Jury nullification occurs in a trial when a jury acquits a defendant even though the members of the jury believe the defendant is guilty. Id. ¶ 68 Although the jury has the inherent power to nullify, this power is in conflict with the jury’s duty to follow the court’s instructions on the law and apply that law to the evidence. See Sparf v. United States, 156 U.S. 51, 74 (1895); People v. Wilson, 972 P.2d 701, 706 (Colo. App. 1998). A jury is required to follow the law as the court instructs even if it disagrees with the instruction on the law. Alvarez v. People, 653 P.2d 1127, 1131 (Colo. 1982); see also Sparf, 156 U.S. at 102 (“[I]t is the duty of juries in criminal cases to take the law from the court, and apply that law to the facts as they find them to be from the evidence.”). Because of this conflict, both the federal circuit courts and divisions of this court have consistently held that trial courts should not instruct a jury that it may nullify a guilty verdict and that courts should not promote nullification. See Wilson, 972 P.2d at 706; Waller, ¶ 76; People v. Scott, 2021 COA 71, ¶¶ 17, 19-20. 
35 ¶ 69 Here, the court’s instructions to the jury that it must follow the law provided by the court is not only consistent with a jury’s duty to follow the law as instructed, but it is consistent with the model jury instructions. The model jury instructions direct the court to provide the following instruction at the close of the evidence in every case: “It is my job to decide what rules of law apply to the case. . . . [Y]ou must follow the instructions I give you. Even if you disagree with or do not understand the reasons for some of the rules of law, you must follow them.” COLJI-Crim. E:01 (2020). And jurors who disregard the court’s instructions or the evidence violate their sworn oaths to “well and truly try the matter before the court, and render a true verdict, according to the evidence and the law.” COLJI-Crim. B:01 (2020). ¶ 70 For these reasons, we conclude that the trial court properly instructed the jury on its duty to follow the law and that the instruction did not abolish the jury’s power to nullify. VII. Sentencing ¶ 71 Sanchez last contends that the trial court’s sentences were not within the presumptive sentencing range. Specifically, he argues 
36 that there is no evidence in the record of aggravating factors to support the increased sentences. ¶ 72 Whether a sentence is authorized by law is a question that we review de novo. Yeadon v. People, 2020 CO 38, ¶ 6. ¶ 73 The jury convicted Sanchez of a class 4 and a class 5 felony. The presumptive sentencing range for a class 4 felony is two to six years and the presumptive sentencing range for a class 5 felony is one to three years. § 18-1.3-401(1)(a)(V)(A), C.R.S. 2021. But, the court is required to sentence a “defendant to a term of at least the minimum in the presumptive range but not more than twice the maximum term authorized in the presumptive range for the punishment of a felony” if, “[a]t the time of the commission of the felony, the defendant was charged with or was on bond for a felony in a previous case and the defendant was convicted of any felony in the previous case.” § 18-1.3-401(9)(a). ¶ 74 At the time Sanchez committed intimidation of a witness or victim and conspiracy, he was charged with multiple felonies in two separate cases — 18CR963 and 18CR973. Before the jury convicted him here, he had been convicted of felonies in those cases. Therefore, when the court sentenced him in all cases, the 
37 aggravated sentencing range for Sanchez’s class 4 felony conviction here was two to twelve years and the aggravated range for his class five felony conviction was one to six years. The trial court sentenced Sanchez to eight years imprisonment for the class 4 felony intimidation of witness or victim conviction and to six years imprisonment for the class 5 conspiracy conviction. Because the court was required by statute to increase the sentencing ranges based on the sentence-enhancing circumstance, it did not need to make additional findings to support the sentences. ¶ 75 Accordingly, we discern no error in the court’s sentence. VIII. Conclusion ¶ 76 The judgment and sentence are affirmed. JUDGE NAVARRO and JUDGE HARRIS concur.